```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

                                :
J. FREDERICK DUAL, JR.
                                :

     v.                         : Civil Action No. DKC 2005-1720

                                :
MAYFLOWER TRANSIT, LLC
                                :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion of Defendant Mayflower Transit, LLC, to dismiss the complaint of Plaintiff J. Frederick Dual, Jr., pursuant to Fed.R.Civ.P. 12(b)(6). The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, Defendant's motion will be granted in part and denied in part.

**I.   Background**

The facts alleged in Plaintiff's complaint are as follows: on or about March 7, 2001, Plaintiff entered into a bill of lading with Defendant Mayflower Transit, LLC, to transport furniture and other property from Plaintiff's Florida home to his Maryland home. Plaintiff paid for additional full value insurance. Plaintiff and his wife are African-American and Plaintiff alleges Defendant's agents "acted towards [Plaintiff] with a racist attitude and made racist comments towards" Plaintiff. (Paper 2, ¶ 10). According to Plaintiff, this racist attitude motivated Defendant to misappropriate Plaintiff's property during transport from Florida

to Maryland and to damage it intentionally during transport from Florida to Maryland and while unloading it at Plaintiff's Maryland home.

During the unloading at Plaintiff's Maryland home, Defendant forced large pieces of furniture through narrow doorways and ripped the door frames off.  Defendant also damaged new hard wood floors in Plaintiff's home by dragging furniture across the floor boards.  When Plaintiff signed the Household Goods Descriptive Inventory Sheet ("inventory sheet") he noticed "four letter obscenities" written on the face of the signature page.  (Paper 2, ¶ 33).  When Plaintiff asked for a copy of the inventory sheet after signing it, Defendant refused to give Plaintiff a copy even though Defendant had promised to do so.

After Plaintiff demanded the inventory sheet, Defendant refused to unpack Plaintiff's boxes or furniture any further and immediately left the location with some of Plaintiff's goods remaining outside in the front and rear of Plaintiff's home.  Plaintiff is a disabled Vietnam veteran and he had to "get assistance" in order to move his property indoors.  (Paper 2, ¶ 33).  Several days later, Plaintiff received the inventory sheet in the mail.  Defendant had altered the inventory sheet by adding checkmarks next to property that had not been delivered.  Plaintiff notified Defendant of his claim for lost property and damaged

2

property within nine months of the shipment and Defendant has refused to pay for the damages.

On February 27, 2004, Plaintiff filed a five count complaint in the Circuit Court for Prince George's County, alleging breach of contract (count I), negligence (count II), conversion (count III), fraud (count IV), and intentional infliction of emotional distress (count VI [sic]).  Defendant subsequently removed the action to this court pursuant to 28 U.S.C. § 1441, on the basis of diversity and federal question jurisdiction.  Defendant now moves to dismiss Plaintiff's complaint on the basis of pre-emption and failure to state a claim for relief.  Plaintiff was notified of his right to file a response, *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), but Plaintiff has not responded to Defendant's motion.  For the following reasons, Defendant's motion will be granted in part and denied in part.

**II.  Standard of Review**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, a Rule 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified

3

pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court must disregard the contrary allegations of the opposing party.  *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  Courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**III. Analysis**

Plaintiff's complaint alleges state common law claims of breach of contract, negligence, conversion, fraud, and intentional

infliction of emotional distress. *See* (Paper 2, ¶ 20-38). Defendant has moved to dismiss Plaintiff's state law claims for breach of contract, negligence, conversion, and fraud, arguing that those claims are pre-empted by the Carmack Amendment, 49 U.S.C. § 14706 (1997). Defendant also argues that only actual damages are recoverable under the Carmack Amendment and that Plaintiff has failed to set forth a claim for intentional infliction of emotional distress.

**A. Pre-emption**

A federal law pre-empts state law when Congress states in express terms that the federal law supersedes state law within a particular field. *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985); *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704 (4th Cir. 1993). Congress' intent to pre-empt state law, when not stated in express terms, may be inferred where the scheme of federal regulation is so pervasive as "to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Hillsborough County*, 471 U.S. at 713 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); *see also Shao*, 986 F.2d at 704. Federal law also pre-empts state law where state law would "impede the purposes and objectives of legislation enacted by Congress." *Shao*, 986 F.2d at 704.

The Carmack Amendment, 49 U.S.C. § 14706, was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887 and it governs the liability of carriers transporting goods across state lines under receipts or bills of lading.[1]  *Shao,* 986 F.2d at 704. Section 14706(a)(1) provides:

> A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part.  That carrier and any other carrier that delivers the property and is providing transportation . . . are liable to the person entitled to recover under the receipt or bill of lading.  The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier . . . when transported under a through bill of lading . . .

In *Adams Express Company v. Croninger*, 226 U.S. 491, 505-06 (1913), the Supreme Court interpreted the Carmack Amendment as manifesting Congress' intent to create a national scheme of carrier liability for goods damaged or lost during interstate transport under a bill of lading.  In defining the pre-emptive scope of the Carmack Amendment, the Supreme Court explained: "Almost every detail of the subject [of the liability of the carrier under a bill

---

[1] A bill of lading is a "document which governs the legal relationship between carrier and shipper with respect to the goods to be transported." *Rehm v. Balt. Storage Co.*, 300 F.Supp.2d 408, 416 (W.D.Va. 2004); *see also Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 374 (2nd Cir. 1994)(explaining a bill of lading is a "shipping contract").

of lading] is covered so completely [by the Carmack Amendment] that there can be no . . . doubt that Congress intended to take possession of the subject and supersede all state regulation with reference to it."  *Id.; see also N.Y., New Haven & Hartford R.R. Co. v. Nothnagle*, 346 U.S. 128, 131 (1953)("With the enactment . . . of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss.").

Following *Adams Express Company*, lower federal courts have interpreted the Carmack Amendment to pre-empt a variety of claims arising from the interstate shipment of goods under bills of lading. *See Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373 (2nd Cir. 1994)(holding the Carmack Amendment pre-empts federal common law claim for breach of implied covenant of good faith and fair dealing); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305 (5th Cir. 1993)(holding Carmack Amendment pre-empts state common law claims of intentional and negligent infliction of emotional distress, breach of contract, breach of implied warranty, slander, fraud, and negligence); *Hughes Aircraft Co. v. N. Am. Van Lines*, 970 F.2d 609 (9th Cir. 1992) (holding the Carmack Amendment pre-empts state common law negligence claim); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407 (7th Cir. 1987)(holding the Carmack Amendment pre-empts state common law claims of negligence, breach of contract, conversion, and intentional misrepresentation).

In *Shao*, 986 F.2d 700, the Fourth Circuit held the Carmack Amendment pre-empts state common law breach of contract and negligence claims that arise from a bill of lading. The shipper filed breach of contract and negligence claims against the carrier for damages to goods resulting from a fire at a warehouse where the goods were being kept during transport. *Id.* at 701. In holding the shipper's claims were pre-empted by the Carmack Amendment, the Fourth Circuit explained the Amendment was intended to create a uniform national policy regarding carrier liability for damages to goods during shipment, and that "[a]llowing a shipper to bring common law breach of contract or negligence claims against a carrier for such loss or damage conflicts with this policy." *Id.* at 706.

   **1. Count I**

Count I of Plaintiff's complaint alleges breach of contract for loss of personal property, damage to personal property, damage to his Maryland home during the unloading, and refusal to pay for the lost or damaged property. (Paper 2, ¶ 21). All of Plaintiff's allegations regarding breach of contract are pre-empted by the Carmack Amendment. *See Shao*, 986 F.2d at 706. Although Plaintiff asserts damage to his Maryland home as a basis for breach of contract, the theory of liability under count I for damage to Plaintiff's home arises from the bill of lading. Thus, Plaintiff's breach of contract claim for damages caused to his home is pre-

8

empted by the Carmack Amendment. *See Richter v. N. Am. Van Lines, Inc.*, 110 F.Supp.2d 406, 411 (D.Md. 2000)(explaining "[t]heories of recovery *pertaining* . . . to the *contract of shipment*" are pre-empted by the Carmack Amendment (emphasis added)).

While the state law breach of contract claim cannot proceed as pled, the doctrine of complete pre-emption effectively re-characterizes this claim as a federal claim under the Carmack Amendment. *See, e.g., PCI Transp., Inc. v. Forth Worth & W. R.R. Co.*, 418 F.3d 535 (5th Cir. 2005)(citing *Hoskins v. Bekins Van Lines*, 343 F.3d. 769 (5th Cir. 2003) and holding the doctrine of complete pre-emption applies to the Carmack Amendment and removal from state court to federal court was therefore proper under 28 U.S.C. § 1441 even though the plaintiff's complaint was based upon state law). In order to allege a claim under the Carmack Amendment for goods lost or damaged during transport under a bill of lading, a plaintiff must allege that: (1) the goods were delivered to the carrier in good condition; (2) the carrier delivered the goods in damaged condition; and (3) the amount in damages. *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964); *Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 294 (4th Cir. 1990).

When a federal statute results in complete pre-emption, the pre-emptive force "is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal

9

claim for purposes of the well-pleaded complaint rule.'"[2] *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)(quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Complete pre-emption is distinct from "ordinary" pre-emption. *Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005). Ordinary pre-emption is considered a "mere defense," *id.*, and when a court applies ordinary pre-emption to state law claims, "there is no automatic conversion of the state law claims into their federal analogue." *U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F.Supp.2d 1322, 1337 (S.D.Ala. 2003). In contrast to ordinary pre-emption, "when complete pre-emption exists, there is 'no such thing' as the state action, since the federal claim is treated as if it appears on the face of the complaint because it effectively displaces the state cause of action." *Lontz*, 413 F.3d at 441 (citation omitted).

The Supreme Court explained in *Adams Express Company*: "[A carrier's duty] to issue a bill of lading and the liability thereby assumed are covered in full [under the Carmack Amendment]; and . . . it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they

---

[2] Under the "well-pleaded complaint rule," "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). *See also Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.").

10

had been therefore subject." *Adams Express Company*, 226 U.S. at 506. *See also Atchison, Topeka & Santa Fe Ry. v. Harold*, 241 U.S. 371, 378 (1916)("[A]s the subject of a carrier's liability for loss or damage to goods moving in interstate commerce under a bill of lading is embraced by the Carmack Amendment, state legislation on that subject has been excluded."); *U.S. Aviation Underwriters*, 296 F.Supp.2d at 1338-39 ("[I]t is evident that Congress intended the Carmack Amendment to provide the *exclusive cause of action* for damage to goods in interstate transportation by a common carrier." (emphasis added)).

Based upon the Carmack Amendment's complete pre-emption of the subject of a carrier's liability for loss or damages to goods under a bill of lading, Plaintiff's complaint states a federal claim under the Carmack Amendment. "In other words, through the magic of 'jurisdictional alchemy[,]'" Plaintiff's state law claims are "morph[ed] into a federal Carmack Amendment claim." *U.S. Aviation Underwriters*, 296 F.Supp.2d at 1339 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 14 (2003)(Scalia, J., dissenting)). Thus, count I will proceed as a Carmack Amendment claim for actual damages.

### 2. Count II

Count II of Plaintiff's complaint alleges negligence for loss of personal property during shipment, damage to personal property during shipment, and damage to Plaintiff's Maryland home during the

11

unloading. *See* (Paper 2, ¶ 26). Plaintiff's negligence claims pertaining to the loss of personal property and damages to personal property are pre-empted by the Carmack Amendment. *See Shao*, 986 F.2d at 706.

Plaintiff's negligence claim for damages to his real property, however, is distinct from the negligence claims for the loss of and damages to Plaintiff's personal property. Unlike Plaintiff's breach of contract claim, the theory of liability of Plaintiff's negligence claim for damage to his home does not depend upon the existence of the bill of lading. *See Rehm v. Balt. Storage Co.*, 300 F.Supp.2d 408, 416 (W.D.Va. 2004) (explaining a carrier's duty not to cause damage to a shipper's residence during the unloading "does not arise from the legal relationship specific to carrier and shipper but from the relationship general to two individuals.").

Although the Fourth Circuit has not addressed whether the Carmack Amendment pre-empts common law negligence claims for damages to real property caused by the unloading of goods, in *Rehm v. Baltimore Storage Company*, a West Virginia district court held that such claims are not pre-empted by the Carmack Amendment. *See Rehm*, 300 F.Supp.2d at 415-16. In *Rehm*, the shipper filed negligence claims against the carrier after witnessing the carrier damage the shipper's residence during the unloading of goods. *Id.* at 410-11. In holding these claims were not pre-empted by the Carmack Amendment, the court explained: "[T]here is no evidence

12

that Congress has sought to extend the reach of the Carmack Amendment to real property damage incidental to the transportation service." *Id.* at 415.

This court finds *Rehm* persuasive. The liability imposed under § 14706(a)(1) is for loss or injury to "property [a carrier] receives for transportation." § 14706(a)(1). "Property" under the Carmack Amendment thus refers to personal property being shipped, and not real property. *See Rehm*, 300 F.Supp.2d at 415 (explaining § 14706 "[o]n its face . . . refers to personalty, and not to real property"). Allowing a negligence claim for damage to real property during the unloading of a shipment of goods does not conflict with or impede the purpose and objectives behind Congress' enactment of the Carmack Amendment. *See Adams Express Co.*, 226 U.S. at 151-52 (explaining the purpose behind the Carmack Amendment was to remove uncertainty among carrier companies regarding their "actual responsibility as to *goods delivered* . . . from one state to another" (quoting *Southern P. Co. v. Crenshaw Bros.*, 63 S.E. 865, 870 (Ga.Ct.App. 1909))(emphasis added)). Accordingly, Defendant's motion to dismiss Plaintiff's negligence claim for damage caused to his Maryland home under count II will be denied.

### 3. Count III

Count III alleges conversion of Plaintiff's property during shipment. *See* (Paper 2, ¶ 29). Although the Fourth Circuit has only addressed the pre-emptive effect of the Carmack Amendment on

13

common law claims of breach of contract and negligence, the Seventh Circuit has held the Carmack Amendment pre-empts conversion claims for goods lost during shipment. *See Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1414-15 (7th Cir. 1987) (holding common law conversion claim was pre-empted by Carmack Amendment because the claim related to the loss of goods during shipment); *see also Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1362 (7th Cir. 1997)("The Carmack Amendment pre-empts a state law conversion claim against a carrier or freight forwarder for loss or damage to interstate shipments."). This court agrees with the Seventh Circuit and finds that the Carmack Amendment pre-empts Plaintiff's conversion claim.

### 4. Count IV

Count IV of Plaintiff's complaint alleges fraud based on Defendant's alleged refusal to give Plaintiff the inventory sheet and Defendant's alleged intentional alteration of the inventory sheet. *See* (Paper 2, ¶ 33). Although the Fourth Circuit has not addressed the Carmack Amendment's pre-emptive effect on fraud claims arising from the shipments of goods under a bill of lading, other courts have held the Carmack Amendment pre-empts such claims. *See Smith v. United Parcel Service,* 296 F.3d 1244 (11th Cir. 2002); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305 (5th Cir. 1993); *Bowman v. Paul Arpin Van Lines, Inc.*, No. Civ.A.3:05CV00062, 2005 WL 3590948 (W.D.Va. Dec. 30, 2005); *Miracle of Life, LLC v. N. Am. Van*

*Lines, Inc.*, 368 F.Supp.2d 494 (D.S.C. 2005); *Richter*, 110 F.Supp.2d 406; *United Van Lines, Inc. v. Shooster*, 860 F.Supp. 826 (S.D.Fla. 1992).

Plaintiff's allegations regarding Defendant's breach of promise to give Plaintiff the inventory sheet or Defendant's intentional alteration of the inventory sheet clearly pertain to Defendant's shipment of goods under the bill of lading. *See Richter*, 110 F.Supp.2d at 411 ("Theories of recovery pertaining to how the agreement to ship was entered into[] [or] what was represented by the carrier's agent . . . relate to the contract of shipment. . . . [and] it makes sense to merge all such claims into Carmack Amendment actions."). Plaintiff's common law fraud claim is therefore preempted by the Carmack Amendment.

**B. Failure to State a Claim - Count VI: Intentional Inflication of Emotional Distress**

In count VI [sic] of his complaint, Plaintiff alleges intentional infliction of emotional distress ["IIED"] based upon the manner in which his furniture was unloaded at his Maryland residence. *See* (Paper 2, ¶ 36). The Fourth Circuit has not decided whether the Carmack Amendment pre-empts claims for IIED that arise from a carrier's shipment of goods. Some courts have held the Carmack Amendment does not pre-empt claims for IIED, *see, e.g., Gordon v. United Van Lines, Inc.*, 130 F.3d 282 (7th Cir. 1997), while other courts have held such claims are preempted by the Carmack Amendment, *see Moffit v. Bekins Van Lines Co.*, 6 F.3d

15

305 (5th Cir. 1993); *see also Richter v. N. Am. Van Lines, Inc.*, 110 F.Supp.2d 406, 411 (D.Md. 2000)(explaining that the majority view among federal circuits is that the Carmack Amendment pre-empts claims for IIED).  The court need not decide that issue because Plaintiff has failed to plead all elements of IIED and therefore has not stated a claim for IIED.

Under Maryland law, the elements of IIED are: (1) intentional or reckless conduct; (2) that was extreme and outrageous; (3) the conduct caused plaintiff's emotional distress; and (4) plaintiff's emotional distress was severe.  *Harris v. Jones*, 281 Md. 560, 566 (1977); *see also Balt.-Clark v. Kinko's Inc.*, 270 F.Supp.2d 695, 701 (D.Md. 2003).  "Each of these elements must be pled and proved with specificity.  It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist."  *Foor v. Juvenile Servs. Admin.*, 78 Md.App. 151, 175 (Ct.Spec.App. 1989); *see also Arbabi v. Fred Myers, Inc.*, 205 F.Supp.2d 462, 466 (D.Md. 2002).  For conduct to qualify as extreme and outrageous, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Harris*, 281 Md. at 567.  "It is for the court to determine whether the alleged conduct may reasonably be regarded as extreme and outrageous."  *Baltimore-Clark*, 270 F.Supp.2d at 701 (citing *Harris*, 281 Md. at 569).

16

Maryland courts have emphasized that the elements of an IIED claim are difficult to satisfy and that "major outrage is essential to the tort; the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough." *Ky. Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 672 (1992). Thus, "the tort of intentional infliction of emotional distress . . . [should] be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653 (1991) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 61 (Ct.Spec.App. 1986)).

Even upon a liberal construction of Plaintiff's complaint, *see Haines v. Kerner*, 404 U.S. 519, 520 (explaining pleadings by *pro se* litigants are subject to "less stringent standards" than pleadings of ordinary lawyers), and reading Plaintiff's complaint in the light most favorable to him, Plaintiff's allegations do not set forth sufficient facts to satisfy the pleading requirements for an IIED claim. *Silkworth v. Ryder Truck Rental, Inc.*,70 Md.App. 264, 271 (Ct.Spec.App. 1987) (recognizing the elements of intentional infliction of emotional distress "must be pled and proved with particularity"). Specifically, Plaintiff did not allege sufficient facts to establish that Defendant's conduct was extreme and outrageous, nor to show that he suffered severe emotional distress.

**1. Extreme and outrageous conduct**

17

Plaintiff alleges there was a racist motive behind Defendant's behavior and that Defendant's agents made racist comments to him, (paper 2, ¶ 10), although Plaintiff alleges no specific details regarding the alleged racist comments made by Defendant's agents. Plaintiff also alleges that Defendant's agents "act[ed] in a threatening and menacing manner" during the unloading, (paper 2, ¶ 36), but Plaintiff alleges no specific facts describing the behavior of Defendant's agents during the unloading. In addition, Plaintiff alleges that instead of unloading his furniture over two days, as allegedly promised, Defendant's agents unloaded the furniture in one day. (Paper 2, ¶ 36). Plaintiff contends that during that one day Defendant "had nine of its agents decend [sic] upon [Plaintiff's] home entering . . . from every door forcing large pieces of furniture through narrow doorways ripping the door frames off, dragging furniture across brand new hard wood floors gouging [the] floor boards, [and] dragging furniture across cement walkways causing large holes in the upholstery." (Paper 2, ¶ 36). Plaintiff also alleges that Defendant's agents wrote "disparaging and obscene comments" about Plaintiff on the inventory sheet. (Paper 2, ¶ 10). Finally, Plaintiff alleges that after he requested the inventory sheet, Defendant's agents thereafter refused to unpack the rest of Plaintiff's boxes and they left with some of Plaintiff's property remaining outside. (Paper 2, ¶ 33).

18

These facts, although disconcerting, are not "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency," *Harris*, 281 Md. at 567, and therefore, Plaintiff has failed to plead this element of IIED. *See Richter*, 110 F.Supp.2d at 411 (holding carrier's seven day delay in delivering goods that resulted in elderly couple having to live without sufficient clothing or medication and enduring physical reactions, was not sufficiently extreme or outrageous for purposes of IIED claim).

### 2. Severity of Emotional Distress

Plaintiff did not plead any facts regarding the severity of his emotional distress. Plaintiff alleges that Defendant acted "in reckless disregard of the obvious and severe emotional distress [Plaintiff] was suffering[,]" (paper 2, ¶ 36), but Plaintiff alleges no facts describing the severity of his emotional distress. Without facts describing the severity of his emotional distress, Plaintiff's allegations are mere conclusions of fact. *See Hirst*, 604 F.2d at 847. Plaintiff has therefore failed to plead the severity of emotional distress element of IIED. Accordingly, this court will grant Defendant's motion to dismiss count VI [sic] of Plaintiff's complaint.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's state law breach of contract, conversion, and fraud claims for pre-emption under the Carmack Amendment will be granted, although count I will be recharacterized as a claim for actual damages arising under the Carmack Amendment. Defendant's motion to dismiss the negligence claim will be granted in part as to the property shipped, but denied as to damages caused to Plaintiff's Maryland home. Defendant's motion to dismiss the claim for intentional infliction of emotional distress for failure to state a claim will be granted.

                                    ／s／
                        DEBORAH K. CHASANOW
                        United States District Judge